**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-3399-WJM-KMT

RYAN DECOTEAU,
ANTHONY GOMEZ, and
DOMINIC DURAN

      Plaintiffs,

v.

RICK RAEMISCH, in his official capacity as the Executive Director of the Colorado Department of Corrections, and
TRAVIS TRANI, in his official capacity as the Warden of the Colorado State Penitentiary and Centennial Correctional Facility,

      Defendants.

---

**ORDER GRANTING PLAINTIFFS' MOTION TO REDEFINE THE CLASS AND DENYING DEFENDANTS' CROSS-MOTION TO REDEFINE THE CLASS**

---

This class action lawsuit seeks a ruling regarding the right to exercise outdoors for certain prisoners at the Colorado State Penitentiary ("CSP"). This Court previously granted Plaintiffs' motion to certify the following class: "All inmates who are now or will in the future be housed in administrative segregation at the Colorado State Penitentiary and who are now or will in the future be subjected to the policy and practice of refusing to provide such inmates access to outdoor exercise." *Decoteau v. Raemisch*, __ F.R.D. __, __, 2014 WL 3373670, at *6 (D. Colo. July 10, 2014).

The Colorado Department of Corrections ("DOC") has since amended its regulations to eliminate "administrative segregation" and replace it with various different classifications. The parties agree that these amended regulations require refinement of

the class definition, but they disagree on the proper redefinition.  Accordingly, before the Court is Plaintiffs' Motion to Modify Class Definition (ECF No. 41) and Defendants' Cross-Motion to Redefine the Class (ECF No. 51).  For the reasons stated below, the Court adopts Plaintiffs' proposed redefinition.

## I.  BACKGROUND

Before DOC's recent regulatory amendments, it would place certain CSP prisoners in "administrative segregation," which was effectively solitary confinement with no opportunity for outdoor exercise.  (ECF No. 1 ¶¶ 1–4.)  Effective June 30, 2014, however, DOC eliminated the term "administrative segregation" and replaced it with a new classification: "Restrictive Housing Maximum Security Status" ("Restrictive Housing").  (ECF No. 51-2 at 1.)  Restrictive Housing still does not allow for outdoor exercise.  (ECF No. 41 at 4.)  Under the new regulations, the major difference between administrative segregation and Restrictive Housing is that inmates in Restrictive Housing have a presumptive limit on their stay—either six or twelve months, depending on the offense that warranted their placement in Restrictive Housing.  (ECF No. 51-2 at 4.)  "Any extension beyond twelve (12) months must be approved by the Director of Prisons as well as the Deputy Executive Director, and must be based upon documented exigent circumstances."  (*Id*. at 14.)

After their time in Maximum Security, inmates are expected to transfer to a "Management Control Unit" ("MCU") at DOC's Sterling facility.  (ECF No. 51 at 9; ECF No. 51-4 at 1.)  MCU inmates at Sterling receive outdoor exercise three times per week.  (ECF No. 51 at 9.)  However, some "overflow" MCU inmates reside at CSP, although DOC claims their time at CSP should be short.  (*Id*.)

Prisoners who behave well in MCU status can then progress to a Close Custody Transition Unit ("CCTU"), which also permits a limited amount of outdoor exercise. (ECF No. 51 at 9–10; ECF No. 51-4 at 2.)

## II.  LEGAL STANDARD

"An order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  Such amendments or alterations are a matter within this Court's discretion.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1201 (10th Cir. 2010).  Nonetheless, the amended class must still meet Rule 23's requirements, meaning: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative party are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("ability to represent").  Fed. R. Civ. P. 23(a).

If those requirements have been satisfied, the action must still fall within one of the three categories set forth in Rule 23(b).  *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004).  Here, both parties propose class definitions that rely on Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

## III.  ANALYSIS

The parties have reacted to DOC's regulatory changes by proposing the

following class redefinitions:

| Plaintiffs | Defendants |
|---|---|
| All inmates who are now or will in the future be housed ~~in administrative segregation~~ at the Colorado State Penitentiary and who are now or will in the future be subjected to the policy and practice of refusing to provide such inmates access to outdoor exercise. | All inmates who are now or will in the future be housed in ~~administrative segregation~~ Restrictive Housing at the Colorado State Penitentiary and who are now or will in the future be subjected to the policy and practice of refusing to provide such inmates access to outdoor exercise <u>for more than nine continuous months</u>. |

Obviously these definitions differ in only two ways, *i.e.*, Defendants' two insertions. The Court will address each insertion in turn.

## A.     "Restrictive Housing"

Both Plaintiffs and Defendants agree to drop "administrative segregation" from the class definition. Defendants, however, propose to replace it with "Restrictive Housing." According to Defendants, this is to avoid

> encompass[ing] large numbers of inmates at CSP who are no longer incarcerated in conditions that would even potentially give rise to a claim for the violation of their Eighth Amendment rights.
>
> More specifically, Plaintiffs' proposed definition is faulty because though there are now inmates at CSP who may not receive "regular" outdoor exercise to the extent that is defined as 3 hours of outdoor exercise per week, these inmates are not being subjected to a deprivation of a basic human need as is required to state an Eighth Amendment violation.

(ECF No. 61 at 8–9.) Defendants characterize this indiscriminately as a challenge to the numerosity, commonality, and typicality prongs of the Rule 23(a) class certification

test.  (ECF No. 51 at 12–13.)[1]

The clarification Defendants seek through inserting "Restrictive Housing" is unnecessary.  The original class definition focused on inmates who are denied all outdoor exercise.  The Court does not understand Plaintiffs' proposed redefinition to broaden that scope.  (*See* ECF No. 67 at 9.)

Inserting "Restrictive Housing" could also lead to additional problems in the future.  The fact that Defendants are now redefining their housing classifications suggests that Defendants may do so again.  Rather than require a round of class redefinition motions for each new regulatory change, the Court believes it prudent to define the class with reference to the challenged condition, and not on the housing classification that creates that condition.

Finally, "Restrictive Housing" may be too restrictive a definition to encompass the challenged condition.  Defendants admit that at least some "overflow" MCU inmates are housed at CSP.  (ECF No. 51 at 9.)  Although MCU inmates at Sterling supposedly receive regular outdoor exercise, Defendants say nothing about the MCU inmates at CSP.  Thus, limiting the class definition to those in "Restrictive Housing" at CSP may be underinclusive.

**B.     "For More Than Nine Continuous Months"**

Defendants also ask the Court to create a class definition based on the length of time that an inmate has been denied outdoor exercise.  Defendants' draw their proposal —"more than nine continuous months"—from the Tenth Circuit's *Perkins* decision,

---

[1] Defendants do not address the remaining Rule 23(a) consideration, ability to represent.  The Court therefore deems that matter conceded in Plaintiffs' favor.

which held that a prisoner could state a claim for an Eighth Amendment violation by alleging deprivation of "all outdoor exercise for more than nine months." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 805, 810 (10th Cir. 1999). Defendants treat this as a holding that nine months is the threshold for a constitutional violation.

Defendants misread *Perkins*. The nine-month period in *Perkins* came from the plaintiff's allegations, not from any direct analysis of the amount of time the state can lawfully withhold outdoor exercise. The Tenth Circuit might have just as easily accepted six or seven or eight months as sufficient to state a claim under the Eighth Amendment in that case. Moreover, "what constitutes adequate exercise will depend on the circumstances of each case, including the physical characteristics of the cell and jail and the average length of stay of the inmates." *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994).

Thus, adding "more than nine continuous months" into the class definition unduly frontloads the merits of the case, both as to the length of deprivation generally and as to the effect of "continuous" deprivation versus, for example, one opportunity for outdoor exercise every nine months. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013). Defendants have not explained how a nine-month threshold in the revised class definition relates to Rule 23's prerequisites.

In this context, it bears repeating what the Court stated in its original class certification order:

> It may be that, if Plaintiffs succeed on the merits, the Court ultimately may order that there is a certain minimum time that an inmate must be at CSP before they have to be permitted outdoor exercise, or that only inmates at certain security levels must be allowed to exercise outdoors. However, the Court can draw whatever lines are necessary when fashioning the ultimate relief on the merits, and any injunction entered can still apply to the Class as a whole.

*Decoteau*, 2014 WL 3373670, at *5.  This statement remains true even in light of Defendants' recent amendments to their housing classifications.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Motion to Modify Class Definition (ECF No. 41) is GRANTED.  The class is redefined as follows: "All inmates who are now or will in the future be housed at the Colorado State Penitentiary and who are now or will in the future be subjected to the policy and practice of refusing to provide such inmates access to outdoor exercise."

2. Defendants' Cross-Motion to Redefine the Class (ECF No. 51) is DENIED.

Dated this 13th day of April, 2015.

BY THE COURT:

William J. Martinez
United States District Judge